POULEY, J.
FACTS
The following facts are undisputed. S.L., a minor child, is an enrolled member of the Coeur d’Alene Tribe (the “CDA Tribe” or “CDA”). The child’s mother is an enrolled member of the CDA Tribe. The child lived with her mother on the CDA Reservation since birth. The mother has lived on the CDA Reservation her entire life. The child’s mother.and father were not married. The father is an enrolled member of the Colville Confederated Tribes, but he also resided with the mother on the CDA Reservation before and after the child’s birth. The father may have last lived on the Colville Reservation as a teenager.
On March 31, 2013, the mother asked the father to come and get the child. There is some dispute as to the nature of this request. The father and the Colville Tribe characterize the mother’s action as “abandonment,” but the mother denies this. The father was on the Colville Reservation at the time and his cousin took him to the CDA Reservation to pick up the child from the mother. After getting the child, the father went to relatives’ homes on the CDA Reservation to get supplies *2 for the baby and then to the home of a relative on the Colville Reservation. The mother denies giving permission to or expecting the father to take the child to the Colville Reservation. At no time prior to March 31, 2013 had the father taken the child to the Colville Reservation.
At her home on the Colville Reservation, the father’s aunt noticed the child had a severe diaper rash, but did not seek immediate medical attention, and the father left with the child to a neighbor’s home. The neighbor alerted authorities about the diaper rash and on April 2, 2013 Colville Family Services took the child into protective custody and placed the child with the father’s aunt.
The Colville Tribal Court conducted a temporary custody hearing on April 8, 2013. The Court found reasonable cause to believe that S.L. was in immediate danger from her parents, there was need for temporary shelter, and Colville Tribal Children and Family Services were named temporary custodians. The child was placed with an aunt on the Colville Reservation pending further proceedings. On April 18, 2013 the Chief Judge of the Col-ville Tribal Court granted the CDA Tribe’s motion to transfer the case to the CDA Tribal Court. The CDA Tribal Court accepted jurisdiction that same day. On April 19, 2013 a youth-in-need-of-care petition was filed in the CDA Tribal Court.
It appears that the Colville order transferring the case to CDA may have been entered without notice to the other parties involved in the matter and the Colville Tribes subsequently moved for reconsideration. The Colville Court stayed the transfer order on April 23, 2013, indicating the matter would be heard on an unspecified future date. On April 29, 2013 the CDA Tribal Court entered an Order requesting that the Colville Court give full faith and credit to the CDA Tribal Court orders finding that the child was a youth-in-need-of-care.
On May 31, 2013 the Colville Tribal Court “set aside” the order “that gave Coeur Dalene (sic) Tribal Court exclusive jurisdiction” (presumably referring to the April 18 order transferring the case to the CDA Tribal Court). The order further found “Both Tribal Courts have concurrent jurisdiction in this matter.” The Court did not include any legal conclusions to support the order, but did find the mother is an enrolled CDA member, the child is an enrolled CDA member, the father is an enrolled Colville member, and that the Uniform Child Custody Jurisdiction Act applies [now UCCJEA and in Washington the uniform act is codified at R.C.W. 26.27]. There were no findings as to the domicile or residence of the child or the parents.
Prior to the adjudicatory hearing in the matter, the CDA Tribe renewed its request to transfer the case to the CDA Tribal Court. In the July 29, 2013 order following the adjudicatory hearing, the Colville Tidal Court reserved “its decision on transferring this case to the Coeur d’Alene Tribe until at least the dispositional hearing.” The July 29 order found that the father had no residence of his own, and that the neglect to the child occurred on the CDA Reservation. Following a dispo-sitional hearing on September 24, 2013, the Colville Court entered an order finding that the child and mother were domiciled on the CDA Reservation, they were both CDA tribal members and that the child “resided on the Colville Reservation” at the time the proceedings began. The Court again found the UCCJEA applied, and that the Colville Tribal Court was the most convenient forum. The Colville Trial Court concluded that the CDA and the Colville Tribal Courts had concurrent jurisdiction over the child and therefore de~ *3 nied the CDA Tribe’s motion to transfer the case. The Coeur d’Alene Tribe and the mother appeal the decision of the Trial Court finding concurrent jurisdiction and refusing to transfer the matter to the CDA Tribal Court.
DISCUSSION
The question before this Court is whether the Coeur d’Alene Tribal Court holds exclusive jurisdiction to hear the matter, in which case the matter must be transferred, or whether, as the Colville Trial Court found, jurisdiction is concurrent with both tribes and if so, whether the matter should be heard in the Colville Tribal Court. Because we find the Indian Child Welfare Act is controlling, we REVERSE the decision of the Colville Trial Court and REMAND with directions to transfer the case to the Coeur d’Alene Tribal Court.
Title 5-2 of the Colville Tribal Code initially establishes the scope of the Col-ville Tribal Court’s jurisdiction to consider minor-in-need-of-care petitions. The “Original Jurisdiction” section 5-2-140 states in part:
The Colville Tribal Juvenile Court has exclusive, original jurisdiction of the following proceedings:
(a) Proceedings in which an Indian minor who resides or is domiciled within the Colville Indian Reservation is alleged to be a minor-in-need-of-care;
Section 5-2-141 grants the Colville Tribal Court concurrent jurisdiction over “all other proceedings” under this Chapter not covered in section 5-2-140. While the Trial Court’s order is unclear as to the legal basis of the holding that the Colville and CDA Tribes share concurrent jurisdiction, it appears to follow from 5-2-141. Perhaps this conclusion was based on the Court’s unstated, but erroneous conclusion that when a child resides in one location and is domiciled in another, concurrent jurisdiction is proper.
While it is generally true that the Indian Child Welfare Act, 25 U.S.C. § 1901 et seq. applies only to child custody proceedings involving Indian children initiated in State courts, Colville Tribal Code 5-2-148 incorporates the act as follows:
It is intended that the provisions of this Chapter be consistent with and carry out the purposes of the Indian Child Welfare Act, 25 U.S.C. §§ 1901, et seq. All applicable provisions of that Act shall be deemed to be incorporated by reference in this Chapter and in the event of conflict between provisions of that Act and this Chapter, provisions of that Act shall apply.
In In Re J. 1 CCAR 62 (09/22/1992) this Court found, in reference to what is now 5-2-148, “It seems clear that the governing body of the Colville Confederated Tribes by legislative actions intended that the Indian Child Welfare Act of 1978 should apply to the acts of the Colville Confederated Tribal Court.”[1]
The Colville Tribal Code and the Indian Child Welfare Act both address exclusive tribal court jurisdiction to hear child custo *4 dy proceedings involving Indians. Like CTC 5-2-140(a), § 1911(a) of the ICWA reads:
(a) Exclusive jurisdiction. An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian Child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
The fact that both the Colville code and ICWA grant tribes exclusive jurisdiction raises the question: if the domicile of the child is the CDA Reservation, but the child was physically located on the Colville Reservation when the proceeding was commenced, does either tribe hold exclusive jurisdiction to hear the matter?
Arguably § 1911(a) gives tribes exclusive jurisdiction as to any state proceeding, but does not address jurisdictional conflicts between two tribes. To reconcile the provisions of CTC 5-2-140, CTC 5-2-148 and § 1911(a) of the ICWA, the ICWA section must be read in context. Section 1911(a) grants exclusive jurisdiction to Indian tribes to hear cases concerning children domiciled “within the reservation of such tribe.” The section’s first reference to “An Indian tribe” is not to just any Indian tribe, but the tribe to which the child is domiciled. While In Re J held that the ICWA applies in Colville Tribal Court, the court found that the tribal code and ICWA were not in conflict under the facts of that ease. In In Re J the mother and child were enrolled CDA members, but at all relevant times they were residents of the Colville Reservation. At the beginning of the hi Rc J proceeding the CDA Tribe consented to the Colville Court’s jurisdiction and only raised an objection after CDA disagreed with a placement decision made by the Colville Court over a year after the case was commenced. These are not facts before the court in the instant case.
The Supreme Court decision in Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (herein Holyfield) is instructive given the conflict between a child’s domicile and her physical location. “ ‘Domicile’ is not necessarily synonymous with ‘residence,’ .... and one can reside in one place but be domiciled in another.” Holyfield at 48, 109 S.Ct. 1597 (citations omitted). The child of an unwed mother takes the domicile of the mother. Holyfield at 48, 109 S.Ct. 1597. In Holyfield, the mother’s domicile was the Mississippi Band of Choctaw reservation. Even though the children were physically located outside the boundaries of the reservation when the proceeding commenced, the Court found the Mississippi Band of Choctaw had exclusive jurisdiction to hear custody proceedings for the subject children pursuant to § 1911(a) of the ICWA.
Significantly, the Supreme Court reached this decision even though the parents of the children actively attempted to avoid tribal jurisdiction. The mother moved and resided off reservation for the purposes of giving birth outside the boundaries of the reservation. The Supreme Court held that “Tribal jurisdiction under § 1911(a) was not meant to be defeated by the actions of individual members of the tribe, for Congress was concerned not solely about the interests of Indian children and families, but also about the impact on the tribes themselves.” Holyfield at 49, 109 S.Ct. 1597. In Holyfield the court rejected the argument that the mother’s intentional act of giving birth off reservation divested the Mississippi Band *5 of Choctaw exclusive jurisdiction under § 1911(a). A similar result is required here.
In the instant matter the parents of the child were never married. It is undisputed that the CDA Reservation has always been the mother’s residence and domicile. It is also undisputed, and the facts overwhelmingly support, that the child is domiciled on the CDA Reservation. Although the Court used the term “resided on the Col-ville Reservation” in reference to the child’s location at the time the action was commenced, the Court also found the father had no permanent residence of his own at that time. It is immaterial, however, whether the child’s “legal residence” was the Colville Reservation when the action commenced. Following the reasoning of Holyfield we hold that given a conflict between the domicile and physical location of the child when the action is commenced, the domicile must prevail in establishing proper jurisdiction. We conclude that because the domicile of the mother and child is the CDA Reservation and that the child is a member of the CDA tribe, pursuant to § 1911(a) the CDA Tribal Court has exclusive jurisdiction to hear any custody matter regarding S.L.
At oral argument the question was raised if § 1911(b) of the ICWA impacted the results of this case, including whether the father could object to the transfer of the case from the Colville Tribal Court to the CDA Tribal Court. This provision is not applicable. Section 1911(b) addresses custody proceedings for Indian children not “domiciled or residing within the reservation of the Indian child’s tribe..,” In this case, the child is a member of the CDA Tribe and is domiciled within the CDA Reservation. Therefore, § 1911(a) applies to the exclusion of § 1911(b). As our above analysis indicates, this gives the CDA Tribe exclusive jurisdiction and neither parent may voluntarily defeat the CDA Tribe’s interest in hearing the matter.
The Court is cognizant that our decision to transfer the case to another jurisdiction after so much time may well disrupt the child and any progress that has been achieved to reunite the child with her parents. This highlights the importance of addressing this issue early in the proceedings, examining all of the factors necessary to render a proper decision and creating a sufficient record for adequate review of that decision. It is unclear from the record how this issue was presented to and decided by the Trial Court. The initial order transferring the matter to CDA was correct as to the outcome, but may not have been entered with proper attention to the presentation of facts and in consideration of the rights of all the parties. The subsequent decision setting aside the order of transfer and finding concurrent jurisdiction lacks sufficient findings and conclusions to determine how the decision was rendered. Deferring the final decision regarding the transfer until after the disposition hearing unnecessarily delayed transferring the matter to the proper forum. Had the court conducted a timely and comprehensive fact-finding regarding all relevant factors to support a decision on the motion to transfer, leading to a final order on the motion, the issue of transfer could have been resolved early in the proceedings and all subsequent efforts to address the health and safety of the child would be undisturbed by this issue.
CONCLUSION
Based on the foregoing, the Trial Court’s order of September 24, 2013 is Reversed and this matter is Remanded to the Trial Court for an order of dismissal *6 transferring the ease to the CDA Tribal Court.

. In the case In Re Welfare of A.S., 3 CCAR 68, 1997 WL 34719489 (1997) this Court again recognized the incorporation of the ICWA, but rejected application of § 1912(d) of the Act. That section of the ICWA specifically refers to proceedings to terminate parental rights under “state law." The Court refused to substitute in the term “tribal law” without clear direction from the Colville Business Council. This Court agrees that those provisions of the ICWA that specifically create duties and obligations as they relate to "state courts" and proceedings under “state law” are not "... applicable provisions of that Act” as referenced in 5-2-148.